UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

AIDAN VIDRINE, INDIVUDALLY                  CIVIL ACTION NO:
AND AS NATURAL TUTRIX OF THE
MINOR CHILDREN, CARTER VIDRINE
AND THOMAS VIDRINE                          JUDGE:

VERSUS

KONOLABS AND WHOLE HERBS
d/b/a WHOLE HERBS KRATOM                    MAGISTRATE:

---

COMPLAINT AND JURY DEMAND

---

The Complaint of **Aidan Vidrine, Individually (surviving spouse of Daniel Vidrine) and as the Natural Tutrix of the Minor Children, Carter Vidrine and Thomas Vidrine (See Letters of Tutorship and Order Confirming Appointment of Tutrix and Undertutrix attached as *Exhibit A)*,** a resident and domiciliary of the full age of majority of New Iberia, Iberia Parish, Louisiana, who respectfully represents:

## I.      JURISDICTION AND VENUE

1.

This is a controversy between citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs.  Defendants carry on and/or transact business within the State of Louisiana.

1

2.

This Honorable Court has diversity jurisdiction of this matter pursuant to 28 U.S.C. § 1332.  Venue is this case is proper in the United States District Court, Western District of Louisiana.

3.

At all times relevant hereto, defendant, Konolabs, has transacted and conducted business in the State of Louisiana.

4.

At all times relevant hereto, defendant, Whole Herbs d/b/a Whole Herbs Kratom (hereinafter Whole Herbs), has transacted and conducted business in the State of Louisiana.

5.

Upon information and belief, defendant, Konolabs, has derived substantial revenue from good and products used in the State of Louisiana, including but not limited to the Western District of Louisiana.

6.

Upon information and belief, defendant, Whole Herbs, has derived substantial revenue from good and products used in the State of Louisiana, including but not limited to the Western District of Louisiana.

7.

Upon information and belief, decedent, Daniel Vidrine, regularly purchased the Green Vein Maeng Da Kratom product from a gas station titled Texaco Lafayette.  This Texaco gas station is located at 1000 US-Hwy 89, Lafayette, Louisiana, 70508.  The phone number

for this Texaco gas station is 337-839-0036.  This Texaco gas station is located within the Western District of Louisiana.

## II.    INTRODUCTION

8.

On February 21, 2021 the life of twenty-six year old Daniel Jacob Vidrine, (hereinafter "Daniel Vidrine" or "decedent") was tragically cut short by an "herbal supplement" known as Kratom.  At the time of his death, Daniel was a husband and father to two children.

9.

Kratom is a dangerous and addictive substance that is marketed and sold as an herbal supplement or remedy.

10.

Upon information and belief, the FDA has also identified the lethal effects of Kratom, citing over 100 reported deaths "associated with the use of Kratom".

11.

Although Kratom is marketed and sold as an herbal supplement, the reality is that certain substances in Kratom activate opioid signaling in the brain.

12.

Kratom, or *Mitragyna speciosa*, is a plant grown in Thailand, Malaysia, Indonesia and Papua New Guinea.

13.

Although not formally classified as an opiate, Kratom contains dozens of psychoactive compounds or alkaloids.  While research is ongoing, the two most studied alkaloids are *mitragynine* and *7-hydroxymitragynine*.  These two alkaloids bind to the same opioid brain receptors as morphine.  Like opiates, these compounds can lead to analgesia (release of pain), euphoria and sedation.

14.

There are no regulations requiring consistency in Kratom's quality, purity and dosage. Kratom manufacturers and distributors have no reliable basis for specifying the variable doses and potencies of Kratom's various psychoactive compounds in product packaging.

15.

Kratom's serious health risks include risks of abuse, dependence, addiction, overdose and death.[1]  Scientific literature has documented serious concerns regarding the toxicity of Kratom in multiple organ systems.  Consumption of Kratom can lead to many adverse health impacts, including respiratory depression, nervousness, agitation, aggression, sleeplessness, hallucinations, delusions, tremors, loss of libido, constipation, skin hyperpigmentation, nausea, vomiting, and severe withdrawal signs and symptoms.[2]

---

[1] *See* FDA News Release, FDA issues warnings to companies selling illegal, unapproved kratom drug products (https://www fda.gov/news-events/press-announcements/fda-issues-warnings-companies-selling-illegal-unapproved-kratom-drug-products-marketed-opioid); *see also* DOJ DEA Drug Fact Sheet – Kratom (https://dea.gov/sites/default/files/2020-06/Kratom-2020 0.pdf)

[2] *See* FDA Import Alert $ 54-15 (https://www.accessdata.fda.gov/dms ia/importalert 1137.html)

Effective treatments for Kratom addiction and overdose have not been developed by the medical community.[3]

16.

Kratom is already illegal in several states and cities, and it is not approved for medical purposes.  The FDA has issued numerous warnings against the use of products containing Kratom or its psychoactive compounds, and has taken action against those who illegally sell the product for pain treatment and other medical uses.[4]

17.

Upon information and belief, despite the serious risks of Kratom use, profit-seeking companies, including defendants, Konolabs and Whole Herbs, are continuing to market Kratom products with unproven and deceptive claims about its safety and ability to cure, treat or prevent medical conditions and diseases.  The FDA's examples of illegal claims being made include statements that "*many people use Kratom to overcome opioid addiction,*" and Kratom is frequently used *"as a natural alternative"* to treat various health conditions, replacing opiate prescriptions.[5]

---

[3] *See* FDA New Release, FDA and Kratom (https://www.fda.gov/news-events/public-health-focus/fda-and-kratom)

[4] *See* FDA Statement, Statement from FDA Commissioner Scott Gottlieb, M.D. on FDA advisory about deadly risks associated with kratom (https://www.fda.gov/news-events/press-announcements/statement-fda-commissioner-scott-gottlieb-md-fda-advisory-about-deadly-risks-associated-kratom)

[5] *See* FDA News Release, FDA issues warnings to companies selling illegal, unapproved kratom drug products marketed for opioid cessation, pain treatment and other medical uses (https://www.fda.gov/news-events/press-announcements/fda-issues-warnings-companies-selling-illegal-unapproves-kratom-drug-products-marketed-opioid)

18.

Defendants', Konolabs and Whole Herbs, ongoing campaign to manufacture and distribute its dangerous and unregulated Green Vein Maeng Da Kratom product throughout the state of Louisiana is an ongoing public nuisance that presents an unreasonable and dangerous threat to the rights of public health and safety possessed in common by all Louisiana residents.

19.

On or about February 21, 2021, after having consumed "Green Vein Maeng Da" Kratom, Daniel Vidrine died of a Kratom overdose.  The Death Certificate lists the cause of death as "acute mitragynine toxicity".  Daniel had consumed the "Green Vein Maeng Da" strain of Kratom immediately prior to his death.

20.

On or about February 23, 2021, an autopsy was performed on Daniel Vidrine's body to determine the cause of death.

21.

The autopsy report states that Daniel Vidrine's cause of death was acute mitragynine toxicity, which is a substance found in Kratom.  Known adverse effects from ingestion of Kratom are seizures, coma and death.  Defendants, Konolabs and Whole Herbs, failed to warn consumers of these dangers.

## III.    PARTIES

### 22.

Complainant, Aidan Vidrine, individually and as the natural tutrix of the minor children, Carter Vidrine and Thomas Vidrine, is an adult citizen and a resident of Iberia Parish, Louisiana, residing at 4902 Tuscany Lane, New Iberia, Louisiana, 70506.  At all times relevant hereto, Aidan Vidrine was the wife of decedent, Daniel Vidrine.  Carter Vidrine and Thomas Vidrine, are minors and are the children of decedent, Daniel Vidrine, and complainant, Aidan Vidrine.

### 23.

Defendants, Konolabs and/or Whole Herbs, are corporations or other business entities organized and existing under the laws of the State of California and/or Delaware, with a principal place of business at 4533 MacArthur Boulevard, Suite #5130, Newport Beach, California 92660.  The phone number listed on the incident bottle of Green Vein Maeng Da Kratom is 424-209-3768.   The incident bottle also lists its email as info@konolabs.com.

### 24.

Defendants, Konolabs and/or Whole Herbs, are corporations or other business entities organized and existing under the laws of the State of California and/or Delaware, with a principal place of business at 755 Ohlone Avenue, Apartment 782, Albany, California 84706.

25.

Defendants, Konolabs and/or Whole Herbs, are corporations or other business entities organized and existing under the laws of the State of California and/or Delaware, with a principal place of business at 679 3rd Street, San Francisco, California 94107.

26.

Defendants, Konolabs and/or Whole Herbs, are corporations or other business entities organized and existing under the laws of the State of California and/or Delaware, with a principal place of business at 85 Rio Robles East, #3207, San Jose, California 95134.

27.

Defendants, Konolabs and/or Whole Herbs, are corporations or other business entities organized and existing under the laws of the State of California and/or Delaware, with a principal place of business at 701 N. Truman Boulevard, Crystal City, Missouri 63019.

28.

At all times relevant hereto, defendant, Konolabs, was acting by and through its agents, ostensible agents, apparent agents, servants, workmen and/or employees, who were acting within the course and scope of their agency, service and/or employment with defendant, Konolabs.

29.

At all times relevant hereto, defendant, Whole Herbs, was acting by and through its agents, ostensible agents, apparent agents, servants, workmen and/or employees, who were

acting within the course and scope of their agency, service and/or employment with defendant, Whole Herbs.

30.

Upon information and belief, Defendant, Konolabs is the parent company of Whole Herbs.

### Does Whole Herbs Brand support the AKA?

Kono Labs, the *parent company* of Whole Herbs Kratom, donates to the AKA monthly.[6]

31.

At all times relevant hereto, defendants, Konolabs and Whole Herbs, purposely directed and established significant contacts in Louisiana, has carried-out, and continues to carry-out continuous and systematic business activities in Louisiana.  Defendants have also purposefully availed themselves of the privilege of conducting business activities in the State of Louisiana.

32.

Upon information and belief, despite the warning, defendants, Konolabs and Whole Herbs, continue to manufacture and sell its Kratom products with inadequate warnings concerning the dangerous effects of Kratom, and instead touting Kratom as a natural, herbal treatment for a variety of ailments including opioid addiction and opioid withdrawal.

---

[6] Konolabs.com -- Frequently Asked Questions Section

## IV.    THE TRAGIC DEATH OF DANIEL VIDRINE

33.

Upon information and belief, Daniel Vidrine, relying on the false misrepresentations of defendants, Konolabs and Whole Herbs, began taking Kratom in 2017.

34.

Upon information and belief, Daniel Vidrine was unaware of the lethal side effects of Kratom and defendants, Konolabs and Whole Herbs, sold their Kratom in packaging that contained inadequate warnings or information regarding the deadly side effects and dangers of the product.

35.

Defendants, Konolabs and Whole Herbs, knew, or in the exercise of reasonable care, should have known of the devastating injuries, addiction and/or death that would befall its customers, including Daniel Vidrine, upon ingestion of its Kratom products.

36.

Defendants, Konolabs and Whole Herbs, knew, or in the exercise of reasonable care, should have known that selling its Kratom products in packaging that contained inadequate warnings or information regarding the dangerous side effects of the Kratom would result in serious injury, addiction and/or death to its customers, including Daniel Vidrine.

37.

Despite this knowledge, defendants, Konolabs and Whole Herbs, continued to sell their Kratom and took no steps to warn its unsuspecting customers, including Daniel Vidrine, with information or adequate warnings of the potentially dangerous side effects.

38.

At all times relevant hereto, defendants', Konolabs and Whole Herbs, deliberate and intentional decision to deprive its customers of adequate warnings and information regarding the dangerous effects of Kratom was made for purely economic reasons.

39.

At all times relevant hereto, defendants, Konolabs and Whole Herbs, chose profits over the safety of its customers, including Daniel Vidrine.

## V.    LIABILITY

40.

Defendant manufacturers, Konolabs and Whole Herbs, were at all times relative to this suit, and is now, engaged in the business of designing, manufacturing, testing, marketing, and/or placing in the stream of commerce Kratom for sale to and use by, members of the public, including the Green Vein Maeng Da strain of Kratom at issue in this lawsuit.  The Green Vein Maeng Da was placed into the stream of commerce by defendants and reached complainant without substantial change and was ingested as directed.  The Green Vein Maeng Da Kratom product at issue was defective and unreasonably dangerous when it entered into the stream of commerce and when used by decedent, Daniel Vidrine.  Additionally, Daniel Vidrine's death arose out of the defendants' deliberate forum-related activities within the State of Louisiana.

41.

Defendants, Konolabs and Whole Herbs, are deemed to be manufacturers under the Louisiana Products Liability Act (LPLA) pursuant to La. R.S. 9:2800.53(1).

42.

Complainant hereby asserts that the defendants, Konolabs and Whole Herbs, are liable to complainant under the Louisiana Products Liability Act (LPLA), La. R.S. 9:2800.54 et seq. for the following reasons:

a.  At the time the Green Vein Maeng Da strain of Kratom left the control of defendants, Konolabs and Whole Herbs, it was defective and unreasonably dangerous due to a failure to contain adequate warnings or instructions, or in the alternative, because the product breached an express warranty or failed to conform to the other expressed factual representations upon which decedent relied, or because it breached an implied warranty, all of which proximately caused the damages for which complainant seeks recovery herein;

b.  The Green Vein Maeng Da strain of Kratom at issue was not reasonably safe as designed, failed to take into account the foreseeable risk in its use at the time Kratom product left the possession of  the defendants, Konolabs and Whole Herbs, and that such risk clearly outweighed the utility of the product or its alleged therapeutic benefits;

c.  At the time the Green Vein Maeng Da strain of Kratom left the control of defendants, Konolabs and Whole Herbs, it possessed a dangerous characteristic that may cause damage, and it was not reasonably safe due to inadequate or defective warnings or instructions that were known of reasonably scientifically knowledge at the time the product left the possession of the defendants.  Defendants failed to used reasonable care to provide an adequate warning of the known dangerous characteristics to users of its Kratom products.

d.  Defendants', Konolabs and Whole Herbs, warnings or instructions were not of a nature that a reasonably prudent manufacturer in the same or similar circumstances would have provided with respect to the dangers of the Kratom product at issue.  There were no warnings or instructions that communicated sufficient information relative to the dangers and safe use of the Kratom product, taking into account the characteristics of the Kratom product, and/or the ordinary knowledge common to the consumer, such as the decedent, Daniel Vidrine.

43.

Defendants, Konolabs and Whole Herbs, owed a duty to those persons purchasing its products, and ingesting its products, including Daniel Vidrine, to exercise reasonable care, and to provide a reasonably safe product, free from defects which could cause unreasonable danger to unsuspecting consumers, including Daniel Vidrine.

44.

Defendants, Konolabs and Whole Herbs, knew or should have known of the dangerous and potentially lethal effects of Kratom, which they intended their customers to ingest or otherwise consume.

45.

Defendants, Whole Herbs and Konolabs, knew or should have known of the devastating injuries, addiction and/or death that would befall their customers, including Daniel Vidrine, upon the ingestion and/or consumption of their Kratom.

46.

Despite this knowledge, defendants, Konolabs and Whole Herbs, breached their duties by failing to design, assemble, manufacture, sell, supply, distribute and/or place into the stream of commerce a product free of defects to prevent the unknowing consumption of the dangerous product.

47.

At all times pertinent and material hereto, defendants knew that its product, Green Vein Maeng Da Kratom was unreasonably dangerous and/or defective as set forth herein.

48.

In the alternative, defendants, should have, at all times pertinent and material hereto, known of the unreasonably dangerous and/or defective characteristics and/or conditions of its Kratom product, had it reasonably employed then-existing scientific and/or technical knowledge, reasonable testing, and/or other reasonable and then-accepted methods of quality assurance and/or quality control.

49.

The Green Vein Maeng Da Kratom product manufactured by defendants is unreasonably dangerous due to an inadequate warning that, at the time the defective product left defendants' control, possessed a characteristic that proximately caused the untimely death of decedent, Daniel Vidrine, and yet defendants failed to use reasonable care to provide an adequate warning of such characteristics and/or dangers to unsuspecting consumers, including Daniel Vidrine.

50.

At all times material hereto, the Green Vein Maeng Da Kratom product manufactured and distributed by defendants is unreasonably dangerous in design, in that at the time the defective Kratom product left defendants' control, there existed, upon information and belief, an alternative design that was capable of preventing decedent's death, and the likelihood of causing decedent's death and the gravity of that harm outweighed the burden (if any) on defendants in adopting such alternative design and the deadly adverse effect on the utility of the defective product at issue in this litigation.

51.

Defendants knew or in light of reasonably available scientific knowledge should have known about the danger that caused the damages for which complainant seeks recovery herein.

52.

A reasonably prudent ordinary consumer, including decedent, Daniel Vidrine, who ingested Green Vein Maeng Da Kratom would not readily recognize the inherent dangers of ingesting the defective product at issue and which involved significant and substantial dangers.

53.

Decedent, Daniel Vidrine, did not know, nor had reason to know, at the time of his usage of the Green Vein Maeng Da Kratom product, or at any time prior to its use, of the existence of the above-described defects.

54.

The above-described defects caused the death of decedent, Daniel Vidrine, when he used said product in its intended and foreseeable manner, and in the manner recommended by Defendants or in a non-intended manner that was reasonably foreseeable.

55.

Defendants, Konolabs and Whole Herbs are therefore liable to complainant for any and all damages arising from decedent's use of the defective product known and labeled as Green Vein Maeng Da Kratom at issue in this litigation.

56.

At all times material hereto, and at the time of Daniel Vidrine's death, decedent had put the Green Vein Maeng Da Kratom product to a reasonably anticipated use as required by the Louisiana Products Liability Act, La. R.S. 9:2800.53 and La. R.S. 9:2800.54.

57.

The Green Vein Maeng Da Kratom product manufactured and distributed by defendants, Konolabs and Whole Herbs, and used by decedent was unreasonably dangerous due to defects in construction and composition under La. R.S. 9:2800.55.

58.

The Green Vein Maeng Da Kratom product manufactured and distributed by defendants, Konolabs and Whole Herbs, and used by decedent on or about February 21, 2021, was unreasonably dangerous and defective in design under La. R.S. 9:2800.56.

59.

Complainant further alleges that there existed reasonable and feasible alternative designs at the time of decedent's death to be shown with more particularity at trial.

60.

The Green Vein Maeng Da Kratom product manufactured and distributed by defendants, Konolabs and Whole Herbs, and used by decedent on or about February 21, 2021, was unreasonably dangerous due to inadequate warnings, as defined under La. R.S. 9:2800.57.

61.

At all times material hereto, complainant alleges that the Green Vein Maeng Da Kratom product was unreasonably dangerous because of non-conformity to an express warranty made by defendants, Konolabs and Whole Herbs, pursuant to La. R.S. 9:2800.58. This breach of express warranty induced decedent, Daniel Vidrine to use the defective Kratom product, which said breach proximately caused decedent's untimely death and damages sued upon herein.

62.

At all times material hereto, complainant alleges the defects in construction and composition under La. R.S. 9:2800.55, in design under La. R.S. 9:2800.56, the inadequate warning under La. R.S. 9:2800.57 and because of non-conformity to express warranty, pursuant to La. R.S. 9:2800.58, existed either at the time the Green Vein Maeng Da Kratom product left the control of the defendant manufacturers, or resulted from a reasonably anticipated alteration of the defective product at issue, pursuant to La. R.S. 9:2800.54.

63.

Complainant further alleges that the Green Vein Maeng Da Kratom product manufactured, distributed and sold by defendants, Konolabs and Whole Herbs, which caused decedent's untimely death was negligently designed, manufactured, assembled, sold, distributed or otherwise placed in the public stream of commerce by said defendants, in the following non-exclusive particulars, to-wit:

a.      Providing a product which did not function as designed and which failed;

b.      Failing to adequately test the defective product;

c. Failing to warn consumers of the hazards of the defective product;

d. Manufacturing a product that was defectively designed;

e. Manufacturing a product that was unreasonably dangerous;

f. Manufacturing a defective product that was unreasonably dangerous in construction and composition;

g. Manufacturing a defective product which was unreasonably dangerous in design;

h. Manufacturing a defective product that was unreasonably dangerous because adequate warnings about the Green Vein Maeng Da Kratom product were not provided to consumers;

i. Failing to conform to an express warranty;

j. The Green Vein Maeng Da Kratom product, at the time of decedent's death, was being used as intended.  The failure of this Kratom product during normal use is the type of occurrence that will not happen in the absence of a defect and/or negligence.  The only reasonable explanation for the failure of the Kratom product at issue during normal use is that said product was defective.

64.

Complainant further alleges that the Green Vein Maeng Da Kratom products manufactured, distributed and sold by defendants, Whole Herbs and/or Konolabs, which caused decedent's death due to defendants negligently designing, manufacturing, assembling, selling, distributing or otherwise placing in the public stream of commerce, in the following non-exclusive particulars, to-wit:

a. Designing, assembling, manufacturing, selling, supplying and/or distributing the subject Kratom with inadequate warnings or information of any kind regarding the potentially dangerous effects of the Kratom product;

b. Designing, assembling, manufacturing, selling, supplying and/or distributing a product that was unreasonably dangerous to its intended and foreseeable users;

c.      Designing, assembling, manufacturing, selling, supplying and/or distributing a product that was not safe and was unreasonably dangerous for all of its intended and represented purposes;

d.      Designing, assembling, manufacturing, selling, supplying and/or distributing a defective product to the general public;

e.      Designing, manufacturing, selling, supplying and/or distributing Kratom products to U.S. customers, including decedent, Daniel Vidrine, despite defendants' knowledge that its Kratom products would expose users to devastating injuries, health risks, addiction and/or death;

f.      Designing, manufacturing, selling supplying and/or distributing Kratom-containing products to U.S. consumers, including decedent, Daniel Vidrine, with the knowledge that Kratom would unreasonably expose users to devastating injuries, health risks, addiction and/or death, but failing to provide adequate, explicit warnings to the ultimate users of the Kratom about the significant risks associated with its use;

g.      Designing, assembling, manufacturing, selling, supplying and distributing the Kratom-containing products to U.S. consumers, including decedent, Daniel Vidrine, as an "herbal supplement" despite knowing or being in the position to know that Kratom acts as an opioid and has all of the same addictive and dangerous qualities and effects as an opioid;

h.      Despite having actual knowledge of prior deaths and injuries caused by use of Kratom-containing products, failing to make all the necessary corrections and/or changes to eliminate the risk of and prevent future injuries and/or deaths;

i.      Despite having actual knowledge of prior deaths and injuries caused by use of Kratom-containing products, failing to investigate, retain, analyze prior incident information in order to warn and/or notify ultimate users and consumers;

j.      Despite having actual knowledge of prior deaths and injuries caused by use of Kratom-containing products, failing to adequately warn users and consumers that the Kratom was capable of causing injuries and/or death;

k.      Failing to provide adequate warnings and/or instructions of the risks of using the product that may be required, or that are created by the inherent limitations in the safety of such use;

l.     Designing, assembling, manufacturing, selling, supplying and distributing a product, the risks of which outweigh its utility;

m.     Failing to have adequate warnings on and/or with the product despite knowing that the dangers and risks associated with the product were unknown and unknowable to the ordinary consumer and/or user, including decedent, Daniel Vidrine;

n.     Failing to have adequate warnings on and/or with the product despite knowing that the dangers and risks associated with the product would cause unreasonable and severe injuries, addiction and/or death;

o.     Designing, assembling, manufacturing, selling, supplying and/or distributing a product without simple and cost-effective safety information and/or measures, including but not limited to adequate warnings and/or instructions;

p.     Failing to adequately and properly test and/or research said product;

q.     Failing to take steps to make the product safer;

r.     Designing, assembling, manufacturing, selling, supplying and/or distributing a product in a defective condition;

s.     Designing, assembling, manufacturing, selling, supplying and/or distributing a product that was unreasonably dangerous to its intended and foreseeable users;

t.     Designing, assembling, manufacturing, selling, supplying and/or distributing a product that was not safe for all of its intended and represented purposes;

u.     Continuing to design, manufacture, sell, supply and/or distribute Kratom and Kratom-containing products to U.S. consumers, including Daniel Vidrine, despite defendants' knowledge that its Kratom products would unreasonably expose users to devastating injuries, health risks, addiction and/or death;

v.     Designing, assembling, manufacturing, selling, supplying and distributing the Kratom and Kratom -containing products to U.S. consumers , including Daniel Vidrine, as an " herbal supplement" despite knowing or being in the position to know that Kratom acts as an opioid and has all of the same addictive and dangerous qualities and effects as an opioid;

w. Despite having actual knowledge of prior deaths and injuries caused by use of Kratom and/or Kratom-containing products, failing to make all the necessary corrections and/or changes to eliminate the risk of and prevent future injuries and/or deaths;

x. Despite having actual knowledge of prior deaths and injuries caused by use of Kratom and/or Kratom-containing products failing to investigate, retain, analyze prior incident information in order to warn, recall and/or notify ultimate users and consumers;

y. Despite having actual knowledge of prior deaths and injuries caused by use of Kratom and/or Kratom-containing products, failing to adequately warn users and consumers that the Kratom was capable of causing injuries and/or death;

z. Despite being a supplier, failing to give any warnings and/or instructions of the possible risks of using the product that may be required, or that are created by the inherent limitations in the safety of such use;

aa. Designing, assembling, manufacturing, selling, supplying and distributing a product, the risks of which outweigh its utility.

65.

By conducting themselves as set forth above, defendants', Konolabs and Whole Herbs, acts and/or omissions were a substantial factor in, the factual cause of, and/or increased the risk of harm of Daniel Vidrine's severe injuries and ultimate death.

66.

Defendants, Konolabs and Whole Herbs, owed a duty to those persons purchasing its products, and ingesting its products, including Daniel Vidrine, to exercise reasonable care, and to provide a reasonably safe product, free from defects which could cause unreasonable danger to consumers.

67.

Defendants, Konolabs and Whole Herbs, knew or should have known of the dangerous and potentially lethal effects of Kratom, which defendants, Konolabs and Whole Herbs, intended its customers to ingest or otherwise consume.

68.

Despite this knowledge, defendants, Konolabs and Whole Herbs, breached their duties by failing to design, assemble, manufacture, sell, supply, distribute and/or place into the stream of commerce a product free of defects to prevent the unknowing consumption of the dangerous product by its consumers, including Daniel Vidrine.

## VI.  DAMAGES

69.

At all relevant times hereto, as a direct and proximae result of defendant manufacturers', Konolabs and Whole Herbs, conscious disregard of the foreseeable harm caused by its Kratom product, decedent, Daniel Vidrine, sustained injuries that led to his death; conscious physical pain and suffering and mental anguish and fear of impending death; permanent loss of earning capacity; permanent loss of enjoyment of life and has been permanently prevented from performing all of his usual duties, occupations, recreational activities and avocations, all to his and his beneficiaries' loss and detriment.

70.

Solely and as a direct and proximate result of the defective Green Vein Maeng Da Kratom product at issue, defendants, Konolabs and Whole Herbs, are liable to complainant, Aidan Vidrine, for causing her a loss of companionship, loss of care, mental anguish,

support, services, advice, counsel, loss of corsortium and reasonable contributions of pecuniary value, that complainant in all reasonable probability would have received from decedent since the date of his untimely death and complainant sustained the loss of companionship, loss of care, mental anguish, support, services, advice, counsel and reasonable contributions of pecuniary value that complainant, in all reasonable probability, would have received from decedent, Daniel Vidrine, in the future.

71.

Solely and as a direct result of the defective Green Vein Maeng Da Kratom product at issue, defendants, Konolabs and Whole Herbs, are liable to the minor children of complainant, Aidan Vidrine, and decedent, Daniel Vidrine, causing said children to sustain the loss of companionship, loss of care, mental anguish, support, services, advice, counsel, loss of consortium and reasonable contributions of pecuniary value, that the minor children in all reasonable probability would have received from decedent since the date of his death and the minor children sustained the loss of companionship, loss of care, mental anguish, support, services, advice, counsel and reasonable contributions of pecuniary value that the minor children, in all reasonable probability, would have received from decedent, Daniel Vidrine, in the future.

72.

Complainant is entitled to and does hereby request trial by jury on the causes of action alleged herein.

**WHEREFORE, COMPLAINANT, AIDAN VIDRINE, INDIVIDUALLY (SURVIVING SPOUSE OF DANIEL VIDRINE) AND AS THE NATURAL TUTRIX OF THE MINOR CHILDREN, CARTER VIDRINE AND THOMAS VIDRINE, PRAY**:

1.      That there be judgment in favor of complainant, **Aidan Vidrine, Individually (surviving spouse of Daniel Vidrine) and as the Natural Tutrix of the Minor Children, Carter Vidrine and Thomas Vidrine** and against the defendants, **Konolabs and Whole Herbs,** in the amount of $5,000,000.00, together with interest from date of death until paid;

2.      That complainant be awarded a trial by jury on all issues herein presented;

3.      For service of process in due form against defendants; and

4.      For all costs of these proceedings, including witness fees and expenses, and for all general and equitable relief.

RESPECTFULLY SUBMITTED:

**MORROW, MORROW, RYAN, BASSETT & HAIK**

 /s/ P. Craig Morrow
P. CRAIG MORROW (#23536)
Post Office Drawer 1787
Opelousas, LA 70571-1787
Telephone: (337) 948-4483
Fax: (337) 942-5234
craigm@mmrblaw.com

*Attorneys for Complainant*